IN OGLETHORPE SUPERIOR COURT, OCTOBER TERM, 1830.

JOSEPH and LEMUEL BREWSTER *vs.* JOHN HARDEMAN, THOMAS N. POULLAIN, and THOMAS WRAY, Executor of PHILIP WRAY, deceased.

*Assumpsit, and plea of Statute of Limitations(a).*

1st. The authority of one partner to make contracts which bind the whole, arises from the confidential nature of the partnership relation.

2d. When that relation ceases,

THE facts in this case are admitted by the parties to be as follows. On the 14th day of October, in the year 1822, John Hardeman, the active partner of the firm of John Hardeman & Co. (which was composed of John Hardeman, Thomas N. Poullain, and Philip Wray,) addressed an order in the name of the firm, to the plaintiffs in New York, for a certain number of hats, which were forwarded pursuant to order. The plaintiffs, confiding in the solvency of the firm, were in no

(a) This opinion was pronounced by Judge Lamar, in June, 1831, and received the concurrence of the Judges in Convention at their session in July, 1832.

haste to push their demand, but after some time placed the account in the hands of their agents, Brewster & Prescott of Augusta, to whom John Hardeman afterwards in the name of the firm promised to pay the same between the first and fifteenth of November, in the year 1826. Plaintiffs allowed themselves to be put off by this promise until April, 1829, when they forwarded the account to an attorney for collection, with instructions to commence a suit ; but before suit was brought, the account was withdrawn from his hands by the plaintiffs, for the purpose of instituting an action, as they supposed they might do, in the District Court at Savannah. Upon learning, however, that the case was not cognizable in that court, they, on the 18th of March, 1830, enclosed the account to a professional gentlemen at Lexington, who, in the April following, commenced a suit, but agreed to suspend the same upon J. Hardeman's promising to see Poullain, and the executor of Philip Wray, deceased, and confidently asserting that the account should be paid before the next term of the court. The suit was suspended, but the money not having been paid, was renewed, and service effected on the 14th day of September, 1830. Philip Wray died in the fall of 1827. At the time of the dissolution of the firm, a full settlement was made by the other partners with John Hardeman—the former not knowing of the existence of the debt in question, but, by way of caution, taking a bond in the sum of $15,000 from Hardeman, conditioned to pay outstanding debts, if there were any. It is also admitted that John Hardeman is now insolvent, but at the time of the dissolution of the partnership, and for three years afterwards he was good for the money, and that if his former partners had been apprized of the existence of the debt, they during that time could have forced him to pay it. The point in controversy between the parties, and which has been referred to me for my decision, is, whether the two defendants, Thomas N. Poullain and Thomas Wray, executor of Philip Wray, deceased, can protect themselves from the payment of this debt by the plea of the statute of limitations?

If it were necessary to rely *exclusively* upon the foregoing statement of facts, it would be impossible to give a definite solution to the question submitted ; for it does not appear in that statement, whether the promise of Hardeman to pay the debt between the first and the fifteenth of November, 1826, was made prior or subsequent to the dissolution of the partnership. Neither the time of the dissolution, nor of the promise, is disclosed. Among the papers, however, which accompany the statement, and to which I presume it was intended that I should refer, I find that Hardeman's promise to pay the account by the first or fifteenth of November, 1826, was contained in a letter signed in his individual name ad-

the authority which grows out of it, and is dependent upon it, also terminates, except so far as a continuing authority touching the unsettled business of the firm, is expressly delegated, or necessarily implied for the benefit of all the parties.

3d. A debt, when once barred by the statute of limitations, can be revived only by a *new* promise, express or implied, and for which the old debt forms the consideration.

4th. After the dissolution of a copartnership, a power in each partner thus to revive against all, a debt from the obligation of which they have once been legally absolved, does not fall within the exception mentioned in the second proposition, and therefore cannot be implied.

5th. Hence the acknowledgment of a debt, or a promise to pay it, made by one partner, *after* the dissolution of the firm, *and after the debt has been barred by the statute,* will not revive the debt against the former partners.

6th. But ac-

OGLETHORPE, October, 1830.

BREWSTER
v.
HARDEMAN and Others.

cording to " precedent and authority" the admission of a debt by one partner after dissolution, but *before the statute has interposed its bar,* will be binding upon the other partners so far as to constitute a new point from which the statute shall commence running.

7th. After dissolution, one partner cannot by his separate acknowledgment, convert an open account into a liquidated demand so as to charge his former partners with interest.

dressed to Brewster & Prescott of Augusta (plaintiff's agents,) and dated *the 8th October,* 1826. And it seems that on the twenty-second of December, 1828, he again acknowledged the debt, and offered to give his individual note at thirty days, for the amount, including interest after four months from the date of the account. All embarrassment, however, which might have arisen from an imperfect statement of the facts, is entirely obviated by the explicit and definite language in which the questions submitted to my consideration are propounded. The gentlemen by whom the case has been referred to me, say—" The legal questions which we conceive to be involved, and which we propose for the determination of Judge Lamar, are these. *First,* Whether the admission made by John Hardeman, one of the partners of the firm of John Hardeman, Thomas N. Poullain, and Philip Wray, *after the dissolution of the partnership,* concerning the joint contract with the plaintiffs, that took place during the partnership, is competent evidence to take the debt out of the statute of limitations, and charge the other partners? *Secondly,* Whether if the plaintiffs are entitled to recover at all, they are not entitled to interest after four months, according to the contract?

The counsel for the plaintiffs in support of the affirmative side of the first question, has cited a number of cases, which are certainly in point, and if consistent with established principles of law, and uncontrolled by counter decisions, would of course be conclusive upon the subject. (Whitcomb v. Whiting, 2 Doug. 651. Wood v. Braddick, 1 Taunton, 104. Smith v. Ludlow, 6 John. 267. 15 John. 3. 4 Conn. 336. 2 Pickering, 581. 3 Pick. 291. Starkie's cases, 81. Peakes' cases, 203. 2 Bing. 306.) It must be conceded, however, that the decision in the case of Whitcomb v. Whiting, upon the authority of which the subsequent cases mainly rest, has not been regarded with uniform approbation even in the Court of King's Bench in which it was pronounced. In Brandram v. Wharton, 1 Barn. & All. 463, Lord Ellenborough, although he seemed to yield a reluctant respect to its authority, expressed his decided conviction that the principle of the case should not be extended. In Atkyns v. Fredgold, 2 Barn. & Cres. 23, the authority of Whitcomb v. Whiting was again impugned, but not expressly overruled.—Chief Justice Abbot remarked that it was contrary to a former decision in *Ventris.* Bailey, J. said, " it may be questionable whether it does not go beyond proper legal limits." Holroyd, J. also spoke of it as a case of doubtful obligation, and the whole court concurred in the opinion that any extension of the principle would be improper. From these judicial *dicta* which were gradually undermining the authority of the case, its ultimate overthrow in the English Courts might have been

reasonably expected. Such however has not yet been the result(*b*). In 1824 a case occurred in the Court of Common Pleas;—Peckam *v.* Raynal and others, 2 Bing. 306, in which an explicit recognition, or rejection of the doctrine became unavoidable. Best, C. J. felt himself bound to sustain it, and applied it to the case then before the court. In 1827, the Supreme Court of Pennsylvania, after full argument, held, that the acknowledgment by one partner after the dissolution of the partnership will not revive a debt barred by the statute of limitations so as to make the former partners liable. And subsequently a similar decision was made by the Supreme Court of the United States in the case of Bell *v.* Morrison, 1 Peters, 351. I am not aware that the point has ever been determined in this State. Probably this is the first case in which it has arisen. It may then be considered as a question open for discussion, and which should be settled upon principle, with a just regard for authority, but without a slavish reliance upon precedents which cease to be authoritative when they become contradictory.

Bland *v.* Hazling, 2 Ventris, 151. is the first case upon this point which we find in the books. That was an action against four upon a joint promise, and the statute of limitations was pleaded. The jury returned a special verdict that one did promise within six years, and that the others did not; whereupon it was decided by the court, that judgment could not be had against the party who had made the promise. I have not had an opportunity of referring to the report of the case for the reasons assigned by the Judges for their decision; but the simple statement of the case would seem to warrant the conclusion that they considered the separate promise of *one* insufficient to bind the rest, otherwise there could have been no difficulty in rendering a judgment against *all.* Douglass, in his report of Whitcomb *v.* Whiting, says that the decision in the case of Bland *v.* Hazling " may be explained upon the manner of the finding—for as the plea was *joint*, and the replication must have alleged a joint undertaking, the verdict did not find what the plaintiff had bound himself to prove." But in reply to this specious suggestion, I would ask—if the court had entertained the opinion that the promise of *one* was as effectual to take a case out of the statute as the promise of *all*, would they not have held that the finding of the jury that one had promised was equivalent to finding that all had promised, and that consequently the plaintiff might have a judgment against *all*? The fair presumption is that they would have so determined; for the one proposition is but the obvious consequence of the other. The statement in the verdict that

(*b*) But very important modifications of the law as to what shall be sufficient to take a case out of the statute have been made by act of parliament, 9th Geo. 4, c. 14, the provisions of which may be found in 14th English Common Law Rep. 315, and are well worthy of the consideration of our own legislature.

OGLETHORPE,
October, 1830.

BREWSTER
v.
HARDEMAN and
Others.

some of the parties did not promise, could hardly have presented an obstacle to such a decision, for under the view just taken, the court might well have considered that part of the verdict to be controlled by the supposed legal effect of the finding that one had promised. It would appear then to be a legitimate conclusion, that in the case of Bland v. Hazling, the Judges were of opinion that the separate promise of one joint debtor to pay the debt was not sufficient to take a barred debt out of the statute so as to charge the other parties.

The case of Whitcomb v. Whiting, (2 Doug. 652) was the next in order of time. It was an action against one of the makers of a joint and several note ; and Lord Mansfield, Willes, J. concurring, decided that payment of the interest on the note and a part of the principal by one of the other joint makers within six years took the debt out of the statute as to all the makers, and was admissible in evidence in an action against any one of them. He said, " payment by one is payment for all, the one acting virtually for all the rest; and in the same manner an admission by one is an admission by all, and the law raises the promise to pay when the debt is admitted to be due." Willes, J. remarked, " the defendant has had the advantage of the partial payment, and therefore must be bound by it." This decision of Lord Mansfield rests upon the assumption that in reference to a joint debt, a mutual agency exists among the joint debtors by virtue of which each may not only do acts in discharge of their joint liability, but may also prolong such liability, or renew it when expired. The proposition is doubtless correct in the case of partnership debts, during the continuance of the partnership, for such mutual agency necessarily results from the partnership relation, and had its origin in the compact of the parties. But after that relation has been severed and destroyed, the general agency which grew out of it must also expire. It is true that a qualified agency must of necessity remain in regard to the unsettled business of the former partnership. But the necessity which sustains, must also limit and control the continuing agency. The unsettled business of an expired firm is divisible into *rights* of the firm, and *liabilities* of the firm. The necessity then by which the qualified agency is supported, extends only to the security or enforcement of those rights on the one hand, and the extinguishment of the liabilities on the other. In the accomplishment of these objects all the partners have a mutual interest, and in effecting either or both, one partner may be regarded as acting not only for himself, but as agent for the others. But beyond these objects the authority does not reach. It does not extend to the creation of a new obligation. The very object of dissolving a partnership is to divest each partner of the power to bind the rest by any future contract. No liability, or, in other words, no obligation that can be judicial-

OGLETHORPE,
October, 1830.

BREWSTER
v.
HARDEMAN and
Others.

ly enforced exists when a debt is barred by the statute of li-
mitations.     As to such a debt, then, the sole ground on
which an agency can be presumed is wholly removed.    There
is certainly some incongruity in the idea of an *implied* agen-
cy, to extinguish a debt already extinguished by law.    An
implied authority, like an implied promise, is raised by opera-
tion of law, and as such must relate to something which the
*law itself* presumes to exist.    But the law does not presume
a debt barred by the statute to exist, and therefore cannot be
said to raise an authority to pay it.    After dissolution the
continuing authority of the several partners in relation to
the unsettled transactions of the firm is founded solely upon
the presumption that such authority is necessary for their
mutual benefit.    But a power in each by his separate ac-
knowledgment to burthen the whole with debts for which they
had ceased to be liable, could in no event become advanta-
geous to all, and therefore cannot be implied.    Suppose a
creditor, whose right of action had been barred by lapse of
time, should demand payment of his debt from the assembled
members of the former partnership.    One of them acknow-
ledges the debt, and promises to pay it; the others (say
four) at the same time deny all indebtedness, and absolutely
refuse to make payment, would the debt be revived against
all?    According to the doctrine of Whitcomb *v.* Whiting it
would, upon the ground that the acknowledgment was made
by the partner not only for himself, but as agent of the others;
where in fact the idea of agency is wholly repelled by the
contemporaneous declarations and conduct of those alleged
to be represented.    But if after dissolution, one partner is to
be considered as agent for the others, when he makes an ad-
mission that takes a barred debt out of the statute, is he not
also to be regarded as an agent for them, when instead of ac-
knowledging the debt, he positively denies it?    The one pro-
position seems to be quite as well founded as the other; and
if both be granted, then the case which I have just supposed,
would present this singular state of things.    The partner ad-
mitting the debt to be due, would be confronted by four
agents, authorized in his behalf to deny, and actually deny-
ing that it was due; and the four partners denying the exis-
tence of the debt would also be represented by an agent, au-
thorized in their behalf to admit, and actually admitting the
debt to be due.    The impossibility of maintaining an effec-
tive agency, both in the admission, and in the denial is suffi-
ciently apparent; but plain, inartificial common sense, would
obviate the whole difficulty by discarding the notion of a vir-
tual agency both in the denial and in the admission.    But
perhaps it may be said that the case stated would be only
an exception to the doctrine, and that the actual denial of the
other partners as supposed, would prevent them from being
affected by the acknowledgment of *one.*    Such a conces-

sion I should hold to be a virtual surrender of the ques tion. It would be in effect to say, that the other part ners, notwithstanding the acknowledgment of one, had a right to protect themselves by actual denial of the debt. *The pleading of the statute, is itself such a denial.* If it should be retorted that the denial must be cotemporane ous with the ackowledgment, I would reply that there is no good reason for such a requisition. If the partners have a right to protect themselves from the effect of an admission by a former partner, made after the debt is barred, the means and opportunity of exercising that right must be conceded. To require that the denial should be simultaneous with the acknowledgment, would be to deprive the parties of the right in question. An opportunity for a simultaneous denial by them would probably never occur. They might not be apprized of the existence of the debt. The creditor might present it only to one without the knowledge of the others, and a suit might be the first notice to them, of the intention of the creditor to require payment. Even in the case of a pay ment by one of several joint debtors upon a debt not barred by the statute, Mr. Justice Story seems to think that there is no necessity for adopting the idea of an agency for the rest. In delivering the opinion of the Supreme Court in the case of Bell *v.* Morrison, 1 Peters, 368. he said "It is true that a payment by one does enure for the benefit of the whole, but this arises not so much from any virtual agency for the whole, as by operation of law—for the payment extinguishes the debt. If such payment were made after a positive refusal or prohibition of the other joint debtors, it would still operate as an extinguishment of the debt, and the creditor could no longer sue them. In truth, he who pays a joint debt, pays it to discharge himself, and so far from binding the others con clusively by this act, as virtually theirs also, he cannot recover over against them in contribution without such payment has been rightfully made." The obligation of a joint debtor to pay the debt arises solely from his own original promise to do so. When the legal force of that promise has expired by lapse of time, it is no longer a joint *debt* in contemplation of law. The parties are all released. It is true that it still remains a moral basis sufficient to sustain a new contract, but the same concurrence of will and assent which originally bound the joint debtors, is necessary to rebind them, and one has no more authority to bind the whole in the latter than he had in the first instance. Upon the whole I am inclined to think that the summary reasoning of Lord Mansfield in the case of Whitcomb *v.* Whiting, involves a *petitio principii,* and is altogether inconclusive in the case of a joint debt barred by the statute at the time of the acknowledgment. Lord Ellenborough considered the doctrine as fraught with much hardship. In the case of Brandram *v.* Wharton, 1 B.

& A. 463. he puts this strong case, "Suppose a person liable jointly with thirty or forty others to a debt, he may have actually paid it ; he may have had in his possession the document by which that payment was proved, but may have lost his receipt. Then though this was one of the very cases which the statute was passed to protect, he may still be bound, and his liabilities renewed by a random acknowledgment by some one of the thirty or forty others who may be careless of what mischief he is doing, and who may even not know of the payment which has been made." That the case of Whitcomb *v.* Whiting has not been overruled in England, at least, so far as it involves the doctrine that an acknowledgment of one joint debtor, *made after the statute has attached,* will revive the debt against all, is perhaps owing more to the profound deference which is paid to the high character of Lord Mansfield as a jurist, than from any thorough conviction of the soundness of the doctrine itself. It seems to be the prerogative of a lofty mind not only to enlighten by its wisdom, but to enslave by its authority. In the case of Pecham *v.* Raynal, 2 Bingham, 306. *Best*, C. J. observed, "It has been supposed that this case (Whitcomb *v.* Whiting) is not law. However, I should be slow to decide that *any thing* which *fell* from Lord Mansfield is not law." Accordingly in the case then before him which was nearly parallel to the case of Whitcomb *v.* Whiting, the Chief Justice of the Common Pleas recognized the authority of the latter. He said "if we were to decide otherwise, we should establish an anomaly in the law, because in other cases the acknowledgment of one of many who are jointly concerned, is binding on the others." The reply to this is that after the statute has barred a debt, the persons who *were* the debtors, are no longer *jointly concerned*. Time has severed the ligament that bound them together as joint *debtors*, and it cannot be reunited but by the consent of *all*. He also adverted to what he deemed analogous decisions in cases of joint trespass, conspiracy, treason, &c., in which it has been held that after the connexion between the parties, has been established by *aliunde* proof, the declarations of one in relation to the common object are admissible against the others. But the analogy does not hold good. It is true that in such cases the declarations of one, whilst engaged in the prosecution of the common design are admissible against all, as being virtually the declarations of all and constituting a part of the *res gestæ*. They are admissible in consequence of the community of purpose. But the common object must be in a course of prosecution, or in some form *existent at the time* of the declarations, otherwise I apprehend they would not be evidence against any other than the party making them. Now when a debt has been barred by the statute of limitations, there is no longer any community of interest between

-19

the persons who *were*, but who by operation of the statute had ceased to be joint *debtors*, and consequently the admission of one cannot be given in evidence against the others. This view of the subject also destroys the force of Mr. Justice Willes' remark in Whitcomb *v.* Whiting, viz. "That the defendant has had the benefit of the partial payment, and must therefore be bound by it." It cannot be said that a person is benefited by the partial payment of a supposed debt which he has not admitted, and which he is not bound to pay.

The principle assumed in the case of Whitcomb *v.* Whiting, was acted upon in the case of Jackson *v.* Fairbank, (2 H. Blk. 343) which was an action against one of two makers of a joint and several promissory note. The other maker had become a bankrupt, and the payee had received from the assignees a dividend on account of the note. The payment of this dividend under the commission was held to be sufficient to prevent the other joint maker who had been sued for the remainder of the debt from availing himself of the statutory protection. Whether the doctrine of Whitcomb *v.* Whiting be well or ill-founded, in this instance it was evidently pushed to an unwarrantable extent, for as the bankrupt himself had not acknowledged the debt, there was in fact no acknowledgment by either of the joint debtors. But Jackson *v.* Fairbank, is not now entitled to much consideration. It was disregarded by Lord Ellenborough in the case of Brandram *v.* Wharton, and condemned by Chancellor Kent in Roosevelt *v.* Marks, 6 John. Ch. R. 291–2.

We have already seen that in the case of Atkyns *v.* Tredgold, 2 Barn. & Cres. 23, some of the judges questioned the correctness of Lord Mansfield's doctrine, and in their solicitude to restrict it within the narrowest limits, it is by no means clear that they did not encroach upon the doctrine itself, although they were of opinion that the case then before them was distinguishable from Whitcomb *v.* Whiting. The case was this. Robert Tredgold and John Tredgold, became the makers of three joint and several promissory notes, payable on demand to John Atkins. John T. was merely a security, and died in 1810. Robert T. continued to pay interest on the notes after the death of J. T. and the last payment was made by him in 1816. The suit was brought upon these notes by the executors of Atkyns against the executors of John Tredgold of whom Robert Tredgold was one. The declaration contained counts upon promises by the testator, and also upon promises by the executors. Upon the trial, the jury, believing that the payment of interest by Robert T. was made by him on his own account and not as executor, under the direction of the court, found a verdict for the defendants. Upon a motion for a new trial it was held that there could be no recovery of the first counts, because the testator having died ten years before the commencement of the action no

promise made by *him* within six years could be implied. Neither could there be a recovery upon the second counts, because the payment by Robert T. having been made by him in his own character as an original debtor, and not as executor could not raise an implied promise by the executors. In the present case however, the executor of Philip Wray can derive no benefit from the decision in Atkyns *v.* Tredgold, because Philip Wray was in life when the debt was acknowledged by Hardeman ; to wit, on the 8th of October 1826 : within four years from which time the action was commenced.

In Wood *v.* Braddick, 1 Taunton, 104. it was decided that the admission of one partner made after the dissolution of the partnership, but concerning a partnership contract which occurred before the dissolution was binding upon the other partners ; and the decision was placed upon the broad ground that in respect to antecedent transactions the partnership still subsisted. If unrestricted scope be given to this doctrine, it is of course decisive of the question which we are now considering. But it appears to be contrary to the decision of Lord Alvanley, in the case of Potherick *v.* Turner, cited by Serjt. Cockell in Wood *v.* Braddick. And in New York it has been repeatedly determined that the acknowledgment of a debt by one partner after the dissolution of the partnership, will not establish the *existence* of the debt as against the other partners, and to the same effect are the adjudications of some of the other State Courts. Hackley *v.* Patrick, 3 Johnson, 536. 6 Ib. 267. 15 Ib. 409. 15 Ib. 3. Anth. N. P. 119. 3 Munf. 191. 4 Munf. 215. 1 Marshall, 189. In Hackley *v.* Patrick, the Superior Court of New York remarked " that after a dissolution of a partnership the power of one party to bind the others wholly ceases. There is no reason why his acknowledgment of an account should bind his copartners any more than his giving a promissory note, or any other act." This proposition would seem to exclude the idea that a cause of action barred by the statute can be revived against all the members of a former firm, by the acknowledgment of one partner after the partnership has been dissolved. Yet the same court, certainly not without some apparent inconsistency admits the doctrine that a cause of action may be thus revived by one against all, provided the existence of the original partnership debt be established *aliunde.* Smith *v.* Ludlow, 6 John. 267. 15 Ib. 409. 424. What legal principle is it that imparts such controlling energy to an acknowledgment in the one case, and leaves it so powerless in the other ? The reason assigned in Smith *v.* Ludlow, for rejecting such acknowledgment as *proof* of the original debt is, that to give it the force of proof for that purpose " would enable one party to bind the other in new contracts." Now if it be true as the weight of authority would seem to prove, that the revival of a debt once barred by the statute, results from a *new promise* express or

OGLETHORPE, October, 1830.

BREWSTER
v.
HARDEMAN and Others.

implied, and for which the previous debt is the consideration, then the reason assigned in Smith v. Ludlow for excluding an acknowledgment as *proof* of the original debt, would equally exclude it as a mean for withdrawing the protection of the statute from those who are not parties to the new promise. To consider it efficacious in either instance, would be to enable "one party to bind the other in new contracts"—the power to do which does not exist after the partnership has terminated. Mr. Justice Story in Bell v. Morrison, after giving his sanction to the doctrine that such an acknowledgment does not supply the place of *aliunde* proof of the original debt, forcibly remarks: "If it does not establish the existence of a debt against a partnership, why should it be evidence against it at all? If evidence *aliunde*, of facts within the reach of the statute, as to the existence of the debt, be necessary before the acknowledgment binds, is not this letting in all the mischief against which the statute intended to guard the parties, viz.: the introduction of stale and dormant demands of long standing and uncertain proof? If the acknowledgment *per se* does not bind the parties, where is the propriety of admitting proof of an antecedent debt extinguished by the statute as to them to be revived without their consent? It seems difficult to find a satisfactory reason why an acknowledgment should raise a new promise, when the consideration upon which alone it rests as a legal obligation is not coupled with it in such a shape as to bind the parties; that the parties are not bound by the admission of the *debt* as a debt, but are bound by the acknowledgment of the debt as a promise upon extrinsic proof."

It has already been suggested that the reanimating principle by which a debt once barred by the statute is revived, consists in a *new* promise express or implied, and for which the old debt forms the consideration. The obvious bearing of this position upon the present inquiry will justify a reference to a few authorities in support of it. Chief Justice Holt in Heyling v. Hastings, (1 Ld. Raymond, 389. 421,) reserved for consideration the following question, "Whether the acknowledgment of a debt within six years would amount to a *new* promise to bring it back out of the statute?" This question he submitted to all the Judges except one, "and they were all of opinion that it would not, but that it was *evidence* of a promise, and Rokeby, Justice, compared it to the case of trover and conversion where demand and denial is held to be *evidence* of a conversion, but not a conversion." It is not fairly inferable from this language that the Judges considered a *new* promise, as the means by which a barred debt is revived, and that an acknowledgment takes such debt out of the statute only because it is *evidence* of a *new* promise? Lord Ellenborough in Boydell v. Drummond, 2 Camp. 157, observed, "If a man acknowledges the existence of a debt barred by the

statute, the law has been supposed to raise a *new* promise to pay it, and thus the remedy is revived." There is some confusion and perhaps some inconsistency in the cases on this subject, says Chief Justice Tilghman, in the case of Jones *v.* Moore (5 Binney's Rep. 577,) but it appears to me from the reason of the thing, and from a review of all the cases that an acknowledgment of the debt can only be considered as a *new* promise, or what is pretty much the same thing in substance, as a circumstance from which the law will imply a new promise. Mr. Justice Story in delivering the opinion of the Supreme Court of the United States, in Bell *v.* Morrison, (1 Peters, 370, 2) takes the same view of the subject, asserts it to be in conformity with the general current of English and American authorities, and supports it by a course of argument, which as the point seems to be well settled, it is unnecessary to introduce.

OGLETHORPE, October, 1830.

BREWSTER *v.* HARDIMAN and Others.

The result then of this inquiry may be summed up in the following propositions.

1st. The authority of one partner to make contracts which bind the whole arises from the confidential nature of the partnership relation.

2d. When that relation ceases, the authority which grows out of it, and is dependent upon it, also terminates ; except so far as a continuing authority, touching the unsettled business of the firm is expressly delegated or necessarily implied for the *benefit* of all the parties.

3d. A debt barred by the statute of limitations, can be revived only by a *new* promise, express or implied, and for which the old debt forms the consideration.

4th. After the dissolution of a partnership, a power in each partner, thus to revive against all, a debt, from the obligation of which they are legally absolved, does not fall within the exception mentioned in the second proposition—because such a power in each could in no event become beneficial to all, and therefore cannot be implied.

5th. From the united force of these propositions, it necessarily follows, that the acknowledgment of a debt, or a promise to pay it, made by one partner after the dissolution of the firm *and after the debt has been barred by the statute*, will not revive the debt against the former partners.

With this conclusion, which rests upon the solid basis of principle—is supported by the decision of the Supreme Court of Pennsylvania, and sanctioned by the highest judicial tribunal of our country, I am the better satisfied, because it secures to a large and valuable class of the community, the protection of a beneficial statute, of which, by a contrary doctrine, they would be in a great measure deprived and subjected to interminable liability. Neither law nor sound policy can require that after the statute has once interposed its shield, it shall be withdrawn without the consent of all the parties in interest, and the fortunes of men, at a time when they have a right to

expect security and repose, placed within the blighting influence of careless, inadvertent, or possibly fraudulent admissions, made by an individual with whom they had long ceased to be connected.

Perhaps the foregoing decision may be deemed a sufficient answer to the first question submitted for my determination. But do not the facts of the case as stated, present another question which has not yet been considered? It appears that the *first* acknowledgment of Hardeman was made *before* the statute had barred the debt; *four* years not having intervened from the time that the debt was contracted to the time of his acknowledgment. It appears also that he again recognized the debt *within* four years from the first acknowledgment. The pending action was commenced in September, 1830. It was instituted, therefore *within* four years from the time of the *first* acknowledgment. Hence the question arises, whether the acknowledgment of a debt by one partner after the dissolution of the firm, but *before the statute has barred the debt*, will intercept the course of the statute, and constitute a new starting point, from which it shall commence running? This point is not distinctly suggested in the question submitted by the parties, and is not embraced in the opinion already pronounced. Much of the argument in support of that opinion rests upon the supposition of an acknowledgment made *after* the action of the statute upon the debt, had been fully consummated, and therefore cannot apply to a case where the acknowledgment occurred *before* the statute had attached. For example, it cannot be said in the latter, as in the former case, that there was no debt, subsisting in contemplation of law at the time of the acknowledgment, that there was no identity of interest—no joint liability—that a partial payment by one could not be considered as *beneficial* to the others, &c. Nor can it be affirmed that an acknowledgment or new promise made *before* the statute has interposed its bar, *revives* the debt, for to adopt the language of Mr. Justice Story—" the *revival* of a debt supposes that it has been once *extinct* and gone, and that there has been a period in which it had lost its legal use and validity"—which cannot be predicated of a debt at the time of an acknowledgment made *before* the statute has attached. On the part of the plaintiffs, then, it may be insisted, if not unanswerably, at least with great plausibility, that as the debt was legally as well as morally subsisting at the time of the acknowledgment —as the connexion between the parties as joint *debtors* had not been dissolved by time;—as their joint liability remained undiminished and complete; and as there was then no necessity for a *new contract* to resuscitate the debt, such admission of the debt by one whose interest and obligation were identical with the rest, ought to be oligatory upon all, at least so far as to arrest the progress of the statute; and so fix a new point from which it shall commence its course. And

OGLETHORPE,
October, 1830.

BREWSTER
v.
HARDEMAN and
Others.

under this aspect of the case the analogies suggested by Chief Justice Best in Pecham *v.* Raynal, 2 Bingham, 306, are not wholly inapplicable.

On the other hand it may be objected, that by a succession of acknowledgments, made at intervals short of the period mentioned in the statute, one partner would have it in his power to protract the liability of his former partners for an unreasonable length of time. This is true, but there is hardly any principle of law however well settled, or however salutary in its general operation, which may not in some *possible* case be attended with hardship. The necessity that the acknowledgment shall be made *before* the statute has operated, affords some protection to the other partners.

But it is unnecessary for me, upon the present occasion, to inquire into the possible consequences of the doctrine. The matter in controversy has been referred to me to be decided upon the narrow ground of "*precedent and authority*." With the exception of the old case of Bland *v.* Hazling in which there is considerable obscurity, and the decision in Pennsylvania, and the case of Bell *v.* Morrison, the authorities English and American, so far as they have fallen under my notice, uniformly recognize the doctrine, that an admission of a debt by one partner after the dissolution of the partnership, will take the debt out of the statute as to all the partners. The decision of the Supreme Court of the United States in the case of Bell *v.* Morrison establishes a contrary doctrine as to admissions made *after* the statute has actually attached. But it, I apprehend, goes no farther. It does not seem to extend to admissions made *before* the statute has operated. Indeed Mr. Justice Story, in delivering the opinion of the court expressly stated that " the question is not as to the authority of a partner after the dissolution, to adjust an admitted and subsisting debt, we mean admitted by the whole partnership, *or unbarred by the statute;* but whether he can by his sole act *after* the action is *barred* by lapse of time, *revive* it against all the partners, without any new authority communicated to him for this purpose." This question was decided by the court in the negative, and although some of the Judges did not concur in the decision, it was supported by Mr. Justice Story with a cogency of argument, which cannot be well resisted. The report of the case in Pennsylvania, I have not seen. My knowledge of it is derived from a note of Mr. Peters to Bell *v.* Morrison, 1 Peters, 369, in which he states upon the authority of Mr. Chief Justice Gibson, that the Supreme Court of Pennsylvania had decided " that the acknowledgment of a partner after dissolution of the partnership, will not take the debt out of the statute, so as to make the other former partners liable." It does not appear whether in that case the admission was made before or after the statute had operated. The presumption is, that it was made afterwards.

OGLETHORPE,
October, 1830.

BREWSTER
v.
HARDEMAN and
Others.

In conclusion, as the doctrine which prevailed before the decision in Pennsylvania, and the case of Bell v. Morrison, appears to have been actually overruled only so far as it extended to admissions made *after* the statute had attached, I am constrained to say, that " upon precedent and authority" the admission of a debt by one partner after dissolution, but *previous* to the action of the statute, will be binding upon the other partners so far as to constitute a new point from which the statute shall commence running. And even leaving the circumscribed ground of mere authority, I should hold upon principle that a partial *payment* by one partner after dissolution, upon a debt not barred by the statute at the time of such payment, ought to have this effect. I am not prepared *wholly* to discard the idea of a virtual agency among former copartners, as Mr. Justice Story seems to be in relation to ordinary joint debtors (c). In the collection of debts due to, and the payment of debts legally subsisting against the firm, a continuing authority in each to act for all, may be presumed. It falls within the reason of the exception mentioned in the second of the series of propositions with which I closed the previous part of this investigation. Where the debt is not barred by the statute at the time of the partial payment by one partner, an advantage accrues to the whole from the payment. It is an act in which they are all legally bound to co-operate—and the law presumes that co-operation for which there exists a legal obligation. But as a bare acknowledgment of the debt, unaccompanied by a partial payment, secures no advantage whatever to the partners; and as the virtual agency which remains in each after dissolution, is founded upon the idea of mutual benefit, it might admit of much doubt;—if the whole doctrine was now to be settled for the first time; whether such acknowledgment ought to operate against any but the party making it, when the creditor has notice of the dissolution. Hitherto, however, the courts have not recognized any distinction between the force of a partial payment by a joint debtor, or former partner, and his mere naked, but explicit acknowledgment of the present existence of the debt.

As to interest, I am inclined to think that it is not recoverable against Paullain and Wray. Our statute, (Prince Dig. 212.) provides that " no verdict shall be received on any unliquidated demand where the jury have increased their verdict on account of interest, nor shall interest be given on any open account in the nature of damages." The debt in this case was an open account at the time it was contracted. It was an open account at the time of the dissolution, as it had not been acknowledged. It still remains an open account as to Poullain & Wray. We have already seen that

(c) See his remarks already quoted from 1 Peters, 869.

an acknowledgment of a debt by one partner after dissolution does not establish the *existence* of a debt against the other partners. It must still be proved *aliunde*. And I think that there is equal reason for holding that one partner after dissolution has no power by his separate act to change the nature of the debt—to convert an open account into a liquidated demand—and thereby to charge the former partners with interest.

OGLETHORPE,
October, 1830.

BREWSTER
*v.*
HARDEMAN and
Others.

NOTE. The case of Whitcomb *v.* Whiting has always been considered as setting up the doctrine, that an acknowledgment by one joint debtor, though made after the statute has actually attached will *revive* the debt against all. But from the report of the case, it does not fully appear whether the partial payment was made before or after the expiration of six years from the maturity of the note. It was made however, within six years next preceding the commencement of the action, and that alone the court seemed to think was sufficient to take it out of the statute.

---

IN RICHMOND SUPERIOR COURT, JULY, 1832.